# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD HACKERMAN, | : | **CIVIL NO.: 1:13-CV-02883** |
| Plaintiff, | : | (Chief Magistrate Judge Schwab) |
| v. | : | |
| DONALD DEMEZA, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM ORDER
June 2, 2019

**I. Introduction.**

This case arises out of the deaths of two horses, Miss Savannah Rose and Miss Savannah Rose's unnamed foal (collectively referred to as "the horses"). Miss Savannah Rose was pregnant with the foal while she was being boarded at a stable owned by the defendants, Donald Demeza and Toledo Racing Stables, LLC (collectively referred to as "Demeza" or "the defendants"). The foal was delivered at the stable, but both horses died shortly after the foal's birth. The plaintiff, Richard Hackerman ("Hackerman"), was the owner of the horses. He brought suit against the defendants alleging that the defendants were grossly negligent in delivering the foal, which caused the deaths of both horses. The defendants denied that they were grossly negligent and brought counterclaims against Hackerman for breach of contract.

After six years of litigation, this case is scheduled to go to trial on June 4, 2019. On May 30, 2019, the court conducted a pretrial conference with the parties. At that conference, the parties discussed a number of outstanding legal issues that could potentially be resolved before trial. We informed the parties that the court would accept motions on those issues if they were filed by the end of the day on May 31, 2019. Demeza filed a motion for partial summary judgment and a supporting brief on May 30, 2019, arguing that the defendants should be granted judgment as a matter of law as to one of their breach of contract counterclaims because Hackerman had not carried insurance on the horses as required by the language of the parties' contract. After we issued an order setting an expedited briefing schedule on the motion, Hackerman filed a brief in opposition on May 31, 2019, and Demeza filed a reply brief later that day. We analyze Demeza's motion for partial summary judgment below. We ultimately conclude that Hackerman breached the parties' contract by failing to carry insurance and accordingly grant the motion for partial summary judgment. We do not, however, decide what damages Demeza is entitled to as a result of Hackerman's breach, as that issue was not raised by the parties.

**II. Summary Judgment Standard.**

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

In a summary judgment motion, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the

motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party's claims and more than some metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248-49. When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'"

*N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. The proper inquiry for the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

**III. Discussion.**

Demeza's motion for partial summary judgment seeks judgment as a matter of law as to Count III of the defendants' counterclaims. *Doc. 150* at 1. In Count III, the defendants assert that the language of the Boarding Agreement and Liability Release ("the contract") required Hackerman to carry insurance and that he breached the contract by failing to do so. *Doc. 12* ¶¶ 28-29. The applicable provision of the contract, titled "Direct Loss to Personal Property Warning" states:

> Owner is hereby warned that while on Toledo Racing Stable premises, direct loss or damage, theft, or injury to Owner's horse, tack, equipment, or trailer is not covered by Toledo Racing Stable's insurance. The actual Owner, having the financial interest in such items, must carry his or her own personal property insurance under a

> homeowner's or other insurance policy, or under a separate policy as in the case of the loss of a horse.

*Doc. 12-1* at 2.

Demeza argues that he is entitled to judgment as a matter of law as to Count III because the contract clearly and unambiguously requires Hackerman to carry insurance and Hackerman did not do so. *Doc. 151* at 4-5. Hackerman responds that "the language of the agreement does not contemplate the loss that occurred with the demise of Miss Savannah Rose and her foal." *Doc. 154* at 1. Hackerman argues that "[a] reasonable reading of the entire document reveals that the stable is concerned with the costs of third-party actions as a result of any untoward activity by the boarded horse." *Id.* Hackerman argues that the contract did not require him to insure the value of Miss Savannah Rose and that it does not release the defendants from liability for the deaths of the horses. *Id.* Hackerman also argues that the parties' contract cannot indemnify Demeza from liability for gross negligence.[1] *Id.* at 2. Demeza responds that Hackerman's assertion that the

---

[1] In support, Hackerman cites to our March 31, 2016 opinion in which we held that the exculpatory clause could not release Demeza from liability for gross negligence. *See doc. 96* at 35. Such citation is misplaced. Our opinion did not hold, as Hackerman implies, that Demeza could not be indemnified for liability for gross negligence, as the issue of the meaning of the indemnification clause was not before the court. Furthermore, as Demeza correctly notes—and as we explain in more detail below—the indemnification provision of the contract and the insurance procurement provision are "two completely separate covenants with opposing public policies related to their enforcement." *Doc. 155* at 2. Hackerman's argument that the indemnification clause does not relieve Demeza of liability for

6

contract does not require him to insure the value of a lost horse is "opposite the plain language of the Agreement." *Doc. 155* at 2. Demeza argues that under Pennsylvania law, contractual terms requiring one party to the contract to obtain insurance are both enforceable and not against public policy. *Id.*

"For a breach of contract claim, a party must show: '(1) the existence of a contract; (2) a breach of the duty imposed by the contract; and (3) damages resulting from the breach.'" *Allegheny Intermediate Unit v. East Allegheny Sch. Dist.*, 203 A.3d 371, 375-76 (Pa. Commw. Ct. 2019) (quoting *Sewer Auth. of Scranton v. Pa. Infrastructure Inv. Auth.*, 81 A.3d 1031, 1041-42 (Pa. Commw. Ct. 2013)).

"The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." *Maisano v. Avery*, 204 A.3d 515, 520 (Pa. Super. Ct. 2019) (quoting *Ramalingam v. Keller Williams Realty Grp., Inc.*, 121 A.3d 1034, 1046 (Pa. Super. Ct. 2015)). "When a writing is clear and unequivocal, its meaning must be determined by its contents alone." *Id.* (quoting *Ramalingam*, 121 A.3d at 1046). "Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties." *Id.* (quoting *Ramalingam*, 121 A.3d at 1046). "A

---

gross negligence is not relevant as to whether the insurance procurement provision requires Hackerman to carry insurance, which is the issue before us.

7

contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* (quoting *Ramalingam*, 121 A.3d at 1046). "In the absence of an ambiguity, the plain meaning of the agreement will be enforced." *Id.* (quoting *Ramalingam*, 121 A.3d at 1046).

As Demeza correctly notes, contractual provisions requiring one party to the contract to obtain insurance—commonly referred to as insurance procurement agreements—are both enforceable and in line with public policy under Pennsylvania law. *See Jalapenos, LLC v. GRC Gen. Contractor, Inc.*, 939 A.2d 925, 933 (Pa. Super. Ct. 2007). "One who enters into an agreement to obtain insurance and neglects to fulfill his obligation becomes himself insurer and liable as such." *DiPietro v. City of Phila.*, 496 A.2d 407, 409-10 (Pa. Super. Ct. 1985) (quoting *Zortman v. Volk*, 97 Pa. Super. 137, 140 (1929)).

Insurance procurement agreements are legally distinct from indemnification provisions. *See Jalapenos*, 939 A.2d at 932. Unlike indemnification provisions, insurance procurement agreements do not raise public policy concerns because the purpose of the agreements is simply to allocate risk among the parties and not to "transfer liability for negligence away from the tortfeasor." *Id.* at 933 (quoting *Penn Avenue Place Assocs., L.P. v. Century Steel Erectors, Inc.*, 798 A.2d 256, 259 (Pa. Super. Ct. 2002)). Rather than "unilaterally reliev[ing] one party from the

8

effects of its future negligence," insurance procurement agreements "work to ensure that injuries or damage [resulting from the contractual relationship] are covered by the appropriate types and limits of insurance, and that the costs of that coverage are appropriately allocated among the parties." *Id.* (quoting *Best Friends Pet Care, Inc. v. Design Learned, Inc.*, 823 A.2d 329, 334 (Conn. App. Ct. 2003)).

"Because it is economically inefficient for both parties to insure against the same risk, the parties' inclusion of an insurance procurement clause indicates that the parties intended to avoid both parties having to face potential liability for the same risk." *St. Paul Fire & Marine Ins. Co. ex rel. Brandywine Cira, L.P. v. Turner Constr. Co.*, 317 F. App'x 219, 221 (3d Cir. 2009) (applying Pennsylvania law) (quoting *Jalapenos*, 939 A.2d at 930). A party breaches an insurance procurement agreement when he fails to obtain the insurance specified by the agreement. *See, e.g.*, *Burlington Coat Factory of Pa., LLC v. Grace Constr. Mgmt. Co., LLC.*, 126 A.3d 1010, 1023-24 (Pa. Super. Ct. 2015).

The contract in the present case unambiguously requires Hackerman to carry insurance covering "direct loss or damage, theft, or injury to [Hackerman's] horse, tack, equipment, or trailer." *Doc. 12-1* at 2. Although Hackerman asserts that "[t]here is nothing in the agreement requiring the horse owner to insure the value of the horse being boarded," we do not see how the contract is susceptible of any interpretation other than such a requirement. As the contract states, "[t]he actual

9

Owner, having the financial interest in such items, must carry his or her own personal property insurance under a homeowner's or other insurance policy, or under a separate policy *as in the case of the loss of a horse*." *Doc. 12-1* at 2 (emphasis added). It is also undisputed that Hackerman did not carry any such insurance, thus breaching the parties' insurance procurement agreement. *See, e.g.*, *Burlington Coat Factory*, 126 A.3d at 1023-24. We therefore conclude that Demeza is entitled to judgment as a matter of law as to his counterclaim that Hackerman breached the parties' contract by failing to carry insurance.

Although we conclude that Hackerman breached the parties' contract by failing to carry the insurance specified in the contract, we do not decide what damages Demeza is entitled to as a result of Hackerman's breach. The parties have not raised the issue of what damages a non-breaching party is entitled to for the breach of an insurance procurement agreement, nor have they adequately briefed what the measure of those damages would be in this case. Accordingly, since the issue of damages is not before us, our holding is limited to the conclusion that Hackerman breached the parties' contract by failing to carry insurance.

**IV. Order.**

For the foregoing reasons, **IT IS ORDERED** that Demeza's motion for partial summary judgment (*doc. 150*) is **GRANTED**.

<u>*S/Susan E. Schwab*</u><br>
Susan E. Schwab<br>
Chief United States Magistrate Judge